UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KEVIN W. CURRYTTO,
    *Plaintiff*,

v.

RICHARD FUREY *et al.*,
    *Defendants*.

No. 3:18-cv-01696 (JAM)

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Kevin W. Currytto is a prisoner in the custody of the Connecticut Department of Correction. He has filed a complaint pursuant to 42 U.S.C. § 1983 alleging in principal part that prison officials were deliberately indifferent to his serious mental health needs. For the reasons set forth below, I will dismiss the complaint in part and allow certain claims to proceed against two defendants.

### BACKGROUND

Plaintiff is a sentenced prisoner at Osborn Correctional Institution. His amended complaint names the following defendants: PRN Brian Bracci, Correctional Officer Greaves, Correctional Officer Hutton, Dr. M. Frayne, Dr. Gaw, Dr. Leonard Santassico, Health Services Administrator Richard Furey, LPC Matthew Clarke, Nurse/Health Services Grievance Coordinator Sharon Beckford, Parole Officer Roman, Social Worker Kevin Powers, Warden G. Wright, and six John Doe Correctional Officers.[1]

The following allegations from the complaint are accepted as true for purposes of the Court's initial review. Currytto has been diagnosed with anxiety disorder, bipolar disorder, and

---

[1] The complaint misspells the name of defendant Richard Furey as "Richard Fury." The Clerk of Court is directed to correct the caption of this case to name "Richard Furey" as the lead defendant.

1

delusional disorder, and is "sometimes considered to be schizoaffective." Doc. #10 at 7. Specifically, he has a "traumatic history" with the police spanning 25 years; his delusions, which typically concern police activity, provoke schizoaffective responses. *Id*. at 8.

Prior to September 26, 2017, Currytto was under the care of Dr. Leonard Santassico at Walker Correctional Institution. *Ibid*. Dr. Santassico became concerned about Currytto's mental health after Currytto began suffering paranoid delusions. *Ibid*. Accordingly, Dr. Santassico raised Currytto's medical needs score from level 3 to level 4 and arranged for Currytto's transfer to Osborn. *Ibid*.

Once he was transferred to Osborn on September 26, 2017, Currytto was admitted to the G-Block Mental Health Unit under the care of Dr. Gaw and Dr. M. Frayne. *Id*. at 7. During his time in G-Block, Currytto met with Clarke for several therapy sessions. *Ibid*. On or about December 17, 2017, Currytto's medical needs score was lowered to a level 3 and he was transferred to general population and assigned to Clarke's caseload. *Ibid*. Currytto was to be "closely monitored" and provided with outpatient health services, including meetings with a mental health professional at least once every 30 days. *Id*. at 8-9.

Clarke met with Currytto for a therapy session on December 22, 2017, and he told Currytto that he would be called to individual and group therapy sessions. *Id*. at 9. Clarke then appeared at Currytto's mental health parole sentencing hearing on January 10, 2018. *Id*. But then from January 10 to May 1, 2018, Clarke provided no treatment to Currytto; he did not create a treatment plan for Currytto and did not schedule or call Currytto to individual or group therapy sessions. *Ibid*. To make matters worse, Clarke falsely indicated on Currytto's medical file that he had provided treatment to Currytto on January 15, 2018, March 5, 2018, April 6, 2018, and April 10, 2018. *Id*. at 10. According to Currytto, Dr. Gaw and Dr. Frayne failed to adequately

supervise Clarke during this time and thereby contributed to the mental health deterioration Currytto suffered due to his lack of treatment. *Id*. at 10-11.

On April 24, 2018, Currytto received copies of his medical records and discovered Clarke's falsification of his mental health record. *Id*. at 12. On the same day, Currytto reported Clarke to the Warden's Office for failing to provide treatment and falsifying his medical records. *Ibid*. On April 26, 2018, Warden Wright informed Currytto that a copy of Currytto's report would be passed along to Furey. *Id*. at 43. Furey did not interview Currytto, investigate, or "otherwise respond administratively" to the report. *Id*. at 12.

Currytto also filed an inmate grievance against Clarke. *Ibid*. On April 30, 2018, Currytto met with Dr. Frayne to discuss his grievance. *Id*. at 13. At this grievance review meeting, Currytto told Dr. Frayne that he felt his therapeutic relationship with Clarke had broken down, and that he no longer wished to be treated by Clarke. *Ibid*. According to Currytto, Dr. Frayne treated him as a "problematic inmate" for filing the inmate grievance. *Id*. at 12. Currytto had secured video evidence to show that he was not released from his housing unit at the dates and times Clarke had indicated they met for therapy sessions, and he informed Dr. Frayne that he had this evidence in his possession. *Id*. at 13-14. However, Dr. Frayne was "disinterested" and "indifferent." *Id*. at 14. Dr. Frayne took no action to correct Currytto's record, investigate or discipline Clarke, or mend the therapeutic relationship between Currytto and Clarke. *Ibid*. He also took no action to secure alternate means of treatment for Currytto given what Currytto felt to be the irreparable breakdown in the therapeutic relationship between himself and Clarke. *Id*. at 15. Instead, Dr. Frayne disposed of Currytto's grievance by indicating that "no further action" was required. *Id*. at 14.

On May 1, 2018, pursuant to Dr. Frayne's referral, Currytto was called down to the mental health unit to meet with Clarke for treatment. *Id*. at 14. Currytto told Clarke that he no longer wished to meet with him due to Clarke's falsification of his record. *Id.* at 16. Clarke responded that he had "see[n]" Currytto in the main hallway of Osborn. Currytto challenges the accuracy of this statement, contending that he had only seen Clarke once in the hallway. *Ibid*. Currytto felt that his mental health was deleteriously affected by this session. *Ibid.* On May 1, 2018, he filed a second grievance against Dr. Frayne for failing to investigate Currytto's first grievance and to provide Currytto with treatment, and against Clarke. *Id*. at 16-17.

According to Currytto, RN Beckford and Furey were responsible for overseeing the grievance system. *Id*. at 17. He claims they were "deliberately indifferent" in their management of the grievance system, and that their failures to correct the system, which in turn prevented the proper and timely investigation of his complaints, prevented him from receiving timely medical treatment. *Id*. at 18-19.

On June 6, 2018, Clarke called Currytto to G-Block for a treatment session. *Id*. at 19. Currytto again informed Clarke that he no longer wished to receive treatment from him. According to Currytto, Dr. Frayne and Clarke were "attempting to create the impression that [he] was suffering delusions" regarding his complaints about them both. *Id*. at 20. All of this caused Currytto's mental health to further deteriorate, and he had "numerous schizoaffective/delusional clashes" with Osborn staff members. *Ibid*. Officers Hutton and Greaves contacted G-Block with their concerns about Currytto's mental health. *Id*. at 21. Subsequently, Kevin Powers, a social worker, interviewed Currytto and took him onto his own caseload on July 11, 2018, at which point Currytto began receiving medical treatment once more. *Ibid*.

Furey disposed of Currytto's May 1 complaint without investigation on September 21, 2018. *Id*. at 22. Although Currytto was supposed to be closely monitored, he received an outpatient healthcare response on only five occasions between January 10, 2018 and July 11, 2018 (January 10, 2018, April 30, 2018, May 1, 2018, June 6, 2018, July 11, 2018). *Id.* at 23. Moreover, Currytto received no mental health treatment between January 10, 2018, and May 1, 2018. *Ibid*. Although Clarke attempted to resume treatment on May 1, 2018, and again on June 6, 2018, Currytto no longer wished to be in his care due to the breakdown in the therapeutic relationship. *Ibid*.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a government entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).[2]

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to

---

[2] The Court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims. That is because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any defendant. If there were no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. *See also Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 165-66 (D. Conn. 2005). Because Currytto has asserted facially plausible federal claims, the validity of his accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or a motion for summary judgment.

plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Currytto alleges claims for violation of the Americans with Disabilities Act (ADA), for First Amendment retaliation, for Eighth Amendment deliberate indifference to serious medical needs, and for Fourteenth Amendment denial of due process and equal protection of the law. He seeks damages, declaratory relief, and injunctive relief.

As a threshold matter, absent a waiver, the Eleventh Amendment bars claims for money damages against state officials in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). To the extent that Currytto seeks monetary damages from the defendants in their official capacities, such official-capacity claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(2). Additionally, because Currytto fails to allege facts to show any ongoing constitutional violation, I will dismiss his official-capacity claims against defendants for declaratory or injunctive relief. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011); *Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000). I will accordingly review Currytto's claims for monetary damages against the defendants in their individual capacities only.

### *Americans with Disabilities Act (ADA)*

Currytto alleges that defendants Clarke, Frayne, and Furey violated Title II of the ADA by failing to provide him with reasonable accommodations for his delusional disorder and schizoaffective disorder. Doc. #1 at 12-13. Additionally, Currytto alleges that these same

defendants excluded him from mental health treatment services in violation of Title II of the ADA. *Id.* at 14.

The ADA does not "appl[y] to claims regarding the quality of medical services provided by correctional departments or provide a remedy for medical malpractice." *Montgomery v. Dep't of Corr.*, 2017 WL 5473445, at *2 (D. Conn. 2017). Moreover, the fact that a disabled prisoner is subject to adverse treatment does not constitute a violation of the ADA's anti-discrimination provision absent evidence that the adverse treatment was by reason of the prisoner's disability. *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (discussing elements of ADA claim in prison context). Accordingly, courts "routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Elbert v. N.Y. State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010); *Nails v. Laplante*, 596 F. Supp. 2d 475, 481-82 (D. Conn. 2009) (dismissing inmate's ADA claim, which focused on inadequate medical care, because the complaint "d[id] not include any non-conclusory allegations of discriminatory animus or ill will based on his disability and identifie[d] no program he could not participate in or any service that was denied as a result of his disability").

Currytto does not allege facts to suggest that he was treated adversely because of his disability. He claims that the defendants provided him with inadequate mental health treatment for his schizophrenia, but he alleges no facts suggesting that this was due to his disability. Because his complaint goes to the inadequacy of treatment for his disability rather than discriminatory action motivated by his disability, he has failed to allege a plausible claim for relief under the ADA. *See Gonzalez v. Maurer*, 2017 WL 4531685, at *3 (D. Conn. 2017) (dismissing prisoner's ADA claims based on denial of eye care, because the prisoner's complaint

7

"is that he has not received treatment for his vision, not that any vision disability prompted any of the defendants to discriminate against or disadvantage him"). Therefore, I will dismiss Currytto's ADA discrimination claims.

*First Amendment*

Currytto's complaint may be construed to attempt to state a claim for First Amendment retaliation against Clarke and Dr. Frayne. Clarke and Dr. Frayne allegedly violated Currytto's right to free speech under the First Amendment by retaliating against him for submitting complaints and grievances.

To state a First Amendment free-speech retaliation claim, a plaintiff must demonstrate: (1) that he was engaged in constitutionally protected speech activity, (2) that the defendant took adverse action against him, and (3) that there was a causal connection between the protected activity and the adverse action. *See Dolan v. Conolly*, 794 F.3d 290, 294 (2d Cir. 2015).

Currytto satisfies the first requirement because filing grievances or lawsuits against correctional staff is protected activity. *See Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003). However, Currytto fails to show which actions taken by Clarke and Dr. Frayne constituted "adverse actions." For purposes of a retaliation claim, adverse actions would plausibly "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis*, 320 F.3d at 353. Currytto alleges only that Dr. Frayne treated him as a "problematic inmate" because he filed a grievance. Doc. #10 at 12. Beyond these allegations that Dr. Frayne treated him "cavalierly," as if he were a "bother," Currytto does not allege with any specificity the retaliatory actions taken by Dr. Frayne. Doc. #10 at 14. "Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that

they be supported by specific facts; conclusory statements are not sufficient." *Riddick v. Arnone*, 2012 WL 2716355, at *6 (D. Conn. 2012); *Dolan*, 795 F.3d at 295 (same).

Even construing Currytto's allegations liberally, the facts do not sufficiently state a claim for First Amendment retaliation against LP Clarke and Dr. Frayne. Currytto has relatedly not alleged *any* facts to support a retaliation claim against John Does 1-6. Accordingly, I will dismiss all First Amendment claims against all defendants.

*Eighth Amendment*

The Eighth Amendment prohibits prison officials from being deliberately indifferent to the serious medical needs of prisoners in their custody. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prisoner who claims deliberate indifference to a serious medical need must satisfy two requirements. First, there is an objective requirement—that the prisoner's medical need was sufficiently serious. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). Second, there is a subjective requirement—that the defendant have acted recklessly. *See Spavone*, 719 F.3d at 138. It is not enough to allege simple negligence or negligent medical malpractice; instead, a prisoner must show that the defendant acted with the equivalent of a criminally reckless state of mind with respect to the prisoner's medical needs. *See Hilton v. Wright*, 673 F.3d 120, 122-23 (2d Cir. 2012); *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*).

Currytto has sufficiently alleged facts to show that he has a serious medical need. He alleges that he suffers from anxiety disorder, bipolar disorder, delusional disorder, and schizophrenia. *See Young v. Choinski*, 15 F. Supp. 3d 194, 199 (D. Conn. 2014) (noting that "[i]n the context of mental health needs, propensities to attempt suicide, harm oneself, and/or exhibit severe depression or anxiety attacks have been viewed as 'sufficiently serious'") (collecting

cases); *Mack v. Semple*, 2016 WL 6902398 at *4 (D. Conn. 2016) (noting that "the need for mental health treatment has generally been deemed to be 'sufficiently serious' for purposes of a deliberate indifference claim") (internal quotations and citations omitted); *Guglielmoni v. Alexander*, 583 F. Supp. 821, 826 (D. Conn. 1984) ("Treatment of mental disorders of a mentally disturbed inmate is…a serious medical need."). As to the subjective requirement, I will analyze the claims against each defendant separately.

Currytto has alleged sufficient facts to suggest that defendant Clarke was aware of his serious mental health conditions and his need for regular treatment and acted with deliberate indifference to his medical condition. Clarke's disregard for the risk of harm Currytto would be exposed to if he did not see his therapist for five months in a correctional setting where he was not at liberty to seek alternative medical treatment rises to the level of an Eighth Amendment deliberate indifference claim. *See Stevens v. Goord*, 535 F. Supp. 2d 373, 388 (S.D.N.Y. 2008) ("While disagreements regarding choice of treatment are generally not actionable under the Eighth Amendment, judgments that have no sound medical basis, contravene professional norms, and appear designed simply to justify an easier course of treatment (in this case, no treatment) may provide the basis of a claim."). If Clarke falsified records of treatment as Currytto alleges, then this is additional evidence of deliberate indifference. Accordingly I will allow Currytto's deliberate indifference claim against Clarke to proceed.

Currytto alleges claims of failure to supervise against Dr. Frayne, Dr. Gaw, and Furey. Although "[a] supervisor may not be held liable under § 1983 merely because his subordinate committed a constitutional tort," the Second Circuit has made clear that "a supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing

to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002); *see also Raspardo v. Carlone*, 770 F.3d 97, 116-17 (2d Cir. 2014) (extensive discussion of supervisory liability requirements under § 1983).

Currytto alleges that Frayne, Gaw, and Furey knew or should have known that Clarke lapsed in his treatment of Currytto for several months and that they did not direct a change in Clarke's behavior or offer alternative treatment to Currytto. Although Currytto alleges specific facts concerning Dr. Frayne's awareness of Clarke's alleged misconduct (Doc. #10 at 13-15), he does not allege sufficient facts to show that Gaw or Furey were not only contemporaneously aware of Clarke's alleged misconduct but that their failure to supervise Clarke caused injury to Currytto. I will allow the claim for deliberate supervisory indifference proceed as to Frayne but not as to any other defendant.

Nor does Currytto allege sufficient facts to advance a deliberate indifference claim against Warden Wright. To the contrary, Currytto alleges that Wright received a copy of Currytto's complaint and informed him that he would pass the complaint along to Furey. As a non-medical staff member, Wright is entitled to defer to the medical staff. *See Siminauski v. Sean*, 2017 WL 391425, at *4 (D. Conn. 2017). Accordingly, the claim against Wright is dismissed.

*Due process*

Currytto claims that various defendants violated his rights under the Due Process Clause of the Fourteenth Amendment. He alleges that Nurse/HSGC Beckford received his Health Services Request on May 7, 2018, and forwarded it to Furey on or about the same day, but that Furey did not respond to or dispose of the request in a timely manner. He also alleges that Dr.

11

Frayne and Furey failed to properly investigate his complaints against Clarke—and, in the case of the latter, his complaints against Dr. Frayne.

"It is well-established that inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures do[] not give rise to a cognizable § 1983 claim." *Solek v. Naqvi*, 2016 WL 7427213, at *3 (D. Conn. 2016) (internal quotation marks and citations omitted). Accordingly, I will dismiss Currytto's due process claim for failure of defendants to respond to grievances.

### *Equal Protection*

Currytto brings a Fourteenth Amendment equal protection claim against Dr. Frayne, Furey, and Clarke. He alleges that he "experience[ed] disparate impact [and] disparate treatment" because Dr. Frayne, Furey, and Clarke failed to provide him with mental health treatment and investigate his requests for review of his treatment.

The Supreme Court has recognized that "[t]he Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). A plaintiff may state a violation of the Equal Protection Clause under the "class of one" theory. To state a valid class-of-one claim, a plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Here, Currytto has failed to allege that he was intentionally treated differently from similarly situated inmates, let alone that the reason for the different treatment

was discrimination. Accordingly, I will dismiss the Fourteenth Amendment equal protection claim.

### *Remaining defendants*

Although the complaint names additional defendants including Dr. Santassico, P.O. Roman, APRN Bracci, C.O. Greaves, C.O. Hutton, and social worker Kevin Powers, the body of the complaint does not include allegations of fact to show that they were personally involved in any of the alleged misconduct. Accordingly, all claims against these defendants are dismissed without prejudice.

## CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

The Eighth Amendment claim for deliberate indifference to medical needs may proceed against defendants Clarke and Frayne in their individual capacities. All other claims against all other defendants are DISMISSED without prejudice to Currytto's filing of an amended complaint by **May 29, 2019** with any additional allegations if he believes in good faith that there are facts that would allow for a valid claim to be asserted against any defendant.

(1) **The Clerk shall** verify the current work addresses of defendants Clarke and Frayne with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of those waiver requests on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** send plaintiff a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) Defendants Clarke and Frayne shall file their responses to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of

change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(9) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10) Currytto's Motion for Appointment of Counsel (Doc. #3) is **DENIED** without prejudice. He may renew the motion at a later stage of the litigation of this case and is advised to discuss this case with an attorney or attorneys at the Inmate Legal Aid Program.[3]

**SO ORDERED** this 30th day of April 2019 at New Haven, Connecticut.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[3] Attorneys at the Inmate Legal Aid Program may be contacted at the following address and telephone number: Inmate Legal Aid Program, Bansley | Anthony | Burdon, LLC, 265 Orange Street, New Haven, CT 06510, Tel. 1-866-311-4527 or 1-203-776-1900.